UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANGEL L. MENDEZ,

         Plaintiff,

  v.                **DECISION AND ORDER**
                       11-CV-276S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

  1.  Plaintiff, Angel Mendez, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Mendez protectively applied for disability insurance benefits and Social Security income (collectively "benefits") on March 6, 2006, alleging that he had been disabled since January 31, 2005 due to impairments such as coronary artery disease, anxiety, and depression.[1] Mendez contends that his impairments have rendered him unable to work. He therefore asserts that he is entitled to payment of disability benefits under the Act.

  2.  The Commissioner of Social Security ("Commissioner") denied Mendez's application for benefits on July 13, 2006. Mendez thereafter requested an administrative hearing, which was held on September 27, 2006 and January 28, 2009 before ALJ Bruce Mazzarella. ALJ Mazzarella considered the case *de novo*, and on March 26, 2009, issued a decision denying Mendez's application for benefits. On February 3, 2011, the Appeals Council denied Mendez's request for review. Mendez filed the current civil action on March

---

[1] The ALJ found that Mendez had sufficient quarters of coverage through December 31, 2008; thus, Mendez had to establish a disability on or before that date. Mendez does not contest this finding.

1

29, 2011, challenging Defendant's final decision.[2]

3. On December 5, 2011, both the Commissioner and Mendez filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After full briefing, this Court took the motions under advisement without oral argument.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla" and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence

---

[2]The ALJ's March 26, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Mendez's request for review.

may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S.

3

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Mendez has not engaged in substantial gainful activity since January 31, 2005, the alleged onset date. (R. at 21);[3] (2) Mendez has severe impediments, specifically borderline intellectual functioning, asthma, mild depression, mild cardiac disease, and mild rheumatoid arthritis (id.); (3) Mendez's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (id.); (4) Mendez has the residual functional capacity to perform a wide range of medium-duty work (id. at 23), and finally, (5) the claimant is capable of permforming past relevant work. (id. at 28.) Ultimately, the ALJ determined that Mendez was not under a disability, as defined by the Social Security Act, since January 31, 2005.  (id. at 29.)

10. Mendez challenges the ALJ's decision, arguing that he erred in failing to find that Mendez's condition meets or equals the listing at §12.05C.  The Commissioner's regulations, found at 20 C.F.R. § 404, Subpart P, App. 1, describe "listed" impairments, which are those impairments deemed sufficient to satisfy "the irrebuttable presumption of disability."  Shaw v. Carter, 221 F.3d 126, 132 (2d Cir. 2000).  The "Listing" at §12.05

---

[3] Citations to the underlying administrative record are designated as "R."

includes four definitions for mental retardation.  Before qualifying under any of these definitions, Mendez must first show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" prior to age 22.  20 C.F.R. § 404, Subpart P, App. 1.  Only once Mendez has made this showing, may he then attempt to satisfy one of the four sets of criterion listed in paragraphs A through D, demonstrating a sufficiently severe impairment.

Mendez maintains that the ALJ should have found him mentally retarded under Subsection C, which requires:

> (1) A valid verbal, performance, or full scale IQ of 60 through 70 and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

An individual who is found to meet these requirements is presumed disabled at step three without further inquiry.  20 C.F.R § 404.1520(a)(4)(iii).  Mendez contends that he meets all the requirements of § 12.05C.

11.     Because Mendez does not speak English, on April 25, 2006, Dr. Renee Baskin administered a Test of Nonverbal Intelligence, Third Edition ("TONI-3"). The test yielded a quotient of 70, which places Mendez in the "borderline range of functioning." (R. at 224.)  Dr. Baskin diagnosed Mendez with "mild mental retardation." (Id.) Pointing to this score and the ALJ's findings that he suffers from several severe impairments, Mendez argues that ALJ Mazarella was required to find him mentally retarded.

12.     IQ tests create a rebuttable presumption of a fairly constant IQ throughout a person's life. Santiago v. Astrue, No. 07-CV-6239, 2008 WL 2405728, *4 (W.D.N.Y. June 11, 2008) (citing Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001)) (finding that the plaintiff met the criteria for mental retardation despite not being IQ tested until after age

22). Absent evidence of a change in a Mendez's intellectual functioning, it is appropriate to assume that the results of an IQ test administered after age 22 accurately reflects the Mendez's IQ prior to age 22. Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y.1999) (finding that plaintiff met the requirements for §12.05 despite not being tested until age 42).

Further, with respect to the use of intelligence tests in assessing possible mental retardation, "[g]enerally, it is preferable to use IQ measures that are wide in scope and include items that test both verbal and performance abilities. However, in special circumstances, such as the assessment of individuals . . . whose culture and background are not principally English-speaking, measures such as the Test of Nonverbal Intelligence, Third Edition (TONI-3) . . . may be used." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 12.00(D)(6)(d). Thus, the ALJ was required to consider Mendez's IQ score of 70 in determining whether he met Listing 12.05C.

13.     The ALJ did consider the score, but it appears that he did not accept it. District courts in this Circuit have permitted such a ruling so long as the ALJ sufficiently explains the basis for his or her decision. See Paulino v. Astrue, No. 08 Civ. 02813(CM)(AJP), 2010 WL 3001752, at *22 (S.D.N.Y July 30, 2010) (collecting cases). ALJ Mazarella found that "although the TONI III yielded a quotient of 70, the claimant's past work history and adaptive functioning are inconsistent with mental retardation and are more consistent with his diagnosis of borderline intellectual functioning." (R. at 23.) This explanation poses two problems: first, it is difficult, if not impossible, to determine whether the ALJ found that Mendez failed the test set out at § 12.05's introductory paragraph, or whether he failed the criteria set out at § 12.05C; second, the explanation is conclusory

and devoid of details.[4]

As noted above, to be categorized as suffering from mental retardation, a claimant must first meet the threshold requirements of 12.05. This introductory paragraph requires that a plaintiff show that he suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" prior to age 22. 20 C.F.R. 404, Subpart P, App. 1. Beyond satisfying only the age component, a claimant must separately evidence deficits in adaptive functioning. See Edwards v. Astrue, No. 5:07-CV-898 (NAM/DEP), 2010 WL 3701776, at *3 (N.D.N.Y. Sep. 16, 2010). This includes consideration of "claimant's effectiveness in areas such as social skills, communication, and daily living skills." West v. Comm'r of Soc. Sec. Admin., 240 Fed. Appx. 692, 698 (6th Cir. 2007).

It may be that the ALJ found Mendez's application lacking at this stage. Indeed, he did consider Mendez's adaptive functioning, but he did so in relation to Sections 12.04B and 12.05D, which require a claimant to demonstrate "marked restrictions" in adaptive functioning. There, he noted that Mendez has "no restrictions" in daily living, "moderate difficulties" in social functioning, and "moderate difficulties" in concentration. (R. at 22.) This analysis, however, is not necessarily transferable to the introductory paragraph of § 12.05, which does not require "marked restrictions" but simply "deficits in adaptive functioning."

14. Therefore, on remand, the ALJ shall find whether Mendez meets the threshold requirements set out in the introductory paragraph of 12.05, and if so, whether he then meets the further requirements set out in 12.05C. If, under 12.05C, the ALJ deems it proper to discredit the TONI-3 score as inconsistent with the record, he shall fully

---

[4]For example, the ALJ notes that Mendez's past work history is inconsistent with his IQ score, but there is no discussion of that work history in the ALJ's decision, and there is no explanation as to how that work history contradicts the results of the TONI-3 score.

explain the reasons for that decision.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED and this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:  July 28, 2012
        Buffalo, New York


                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              Chief Judge
                                              United States District Court